IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br><br><br><br>              vs.<br><br><br>SAMI HARB dba Movies by Mail and<br>MICHAEL HARB dba Movies by Mail,<br><br>      Defendants. | MEMORANDUM DECISION AND<br>ORDER DENYING MOTION TO<br>DISMISS INDICTMENT OR<br>CHANGE VENUE<br><br><br><br><br>Case No. 2:07-CR-426 TS |

## I.  INTRODUCTION

Defendants move to dismiss the Indictment on the grounds that (1) the federal obscenity statutes that they are charged under violate the United States Constitution by burdening the rights of adults who wish to view or to distribute such material; or (2) because of vindictive prosecution.  In the alternative, they seek (1) a ruling that national community standards apply to the obscenity determination; or (2) a venue transfer to the Northern District of Ohio where they operate their business. The Court denies the Motion to Dismiss because controlling United States Supreme Court case law has repeatedly rejected similar constitutional challenges to these criminal statutes, case law that has not

1

been explicitly overruled by the 2003 United States Supreme Court case, *Lawrence v. Texas.*[1]   Similarly, the controlling case law on the application of community standards remains unchanged.  The Court finds no evidence of vindictive prosecution and declines to transfer venue.

## II.  MOTION TO DISMISS

### A.  Constitutionality

Defendants are charged with three counts of violating 18 U.S.C. § 1461 – Using the United States Mail to Transport Obscene Matter in Interstate Commerce and three counts of violating 18 U.S.C. § 1466 – Engaging in a Business of Selling or Transferring Obscene Matter.

Defendants argue that under *Stanley v. Georgia,*[2] adults may lawfully possess obscene material in their homes for viewing in private; and therefore, the two statutes under which they are prosecuted are invalid because, by prohibiting the transport or sale of such material, the statutes unconstitutionally burden the First and Fifth Amendment rights of adults who wish to view such material in their homes or to distribute such material for home use.  The government does not contest Defendants' standing to challenge the constitutionality of §§ 1461 and 1466 on these grounds.

---

[1]539 U.S. 558 (2003).

[2]394 U.S. 557 (1969).

Defendants acknowledge that the statutes at issue were held to be constitutional in the *Reidel/Orito*[3] line of cases, but argue that recent case law, especially *Lawrence v. Texas*, has undermined such precedent, a position taken in the Fifth Circuit's case *Reliable Consultants v. Earle*.[4]   In *Reliable Consultants*, the Fifth Circuit considered a constitutional challenge by a business to a Texas statute criminalizing the sale, advertisement, and distribution of some types of sexual devices, unless the sale was shown to be for a statutorily approved purpose.[5]   The Fifth Circuit construed *Lawrence* as recognizing a constitutional right "to be free from governmental intrusion regarding 'the most private human [conduct], sexual behavior.'"[6]   In other words, the Fifth Circuit's position is that "*Lawrence* is properly understood to explain the contours of the substantive due process right to sexual intimacy."[7]   The Fifth Circuit, however, recognized that "*Lawrence* did not categorize the right to sexual privacy as a fundamental right."[8]   The Fifth Circuit held that the Texas statute impermissibly burdened the right recognized in *Lawrence* because the

---

[3]*United States v. Reidel*, 402 U.S. 351 (1971); *United States v. Orito*, 413 U.S. 139 (1973).

[4]517 F.3d 738 (5th Cir. 2008).

[5]*Id*. at 741.

[6]*Id*. at 743-44 (quoting *Lawrence*, 539 U.S. at 567).

[7]*Id.* at 744. *Contra Seegmiller v. LaVerkin City*, 528 F.3d 762, 771 (10th Cir. 2008) (civil rights case arguing that the *Lawrence* decision counsels against finding a broad-based fundamental liberty interest right to engage in private sexual conduct).

[8]*Reliable Consultants*, 517 F.3d at 745 n.32.

3

statute made it impossible for individuals to legally purchase the devices in Texas.[9]  The Fifth Circuit examined all of the State of Texas' asserted governmental interests in connection with the statute and found each justification insufficient for the statute after *Lawrence*.[10]  Accordingly, the Fifth Circuit held that Texas "may not burden the use of" the devises "by prohibiting their sale,"[11] and held that the statute had provisions that violated the Fourteenth Amendment of the United States Constitution.[12] Defendants urge this Court to find that the decisions upholding the statute are no longer controlling in view of what they argue are the "substantive protections established by *Lawrence* and extended by *Reliable Consultants* to commercial distribution of sexual devices," especially as the older decisions did not "take account of the Internet as a vehicle for commerce in sexually explicit materials."[13]

In contrast, the government argues that *Lawrence* did not impliedly overturn controlling precedent on the constitutionality of the obscenity statutes at issue in this case. In support, it relies on the Third Circuit's case *United States v. Extreme Associates*.[14]  In *Extreme Associates*, the Third Circuit followed the United States Supreme Court's clear direction to lower courts that "[i]f a precedent of [the Supreme Court] has direct application

---

[9]*Id*. at 744.

[10]*Id*. at 745-46.

[11]*Id*. at 747.

[12]*Id*. at 740.

[13]Def.s' Mem. at 13.

[14]431 F.3d 150 (3rd Cir. 2005).

4

in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [theSupreme Court] the prerogative of overruling its own decisions."[15]   This direction was reiterated in *Agostini v. Felton*:[16]

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overrruled an earlier precedent.[17]

This doctrine is binding on all federal courts and requires that while a movant may make, and a trial court may consider, the argument that subsequent case law impliedly overrules binding precedent, the trial court must nonetheless recognize that the motion must "be denied unless and until" the Supreme Court "reinterpret[s] the binding precedent."[18]

Whatever its view of the developing law, if directly controlling case law remains intact, the Tenth Circuit adheres to the *Agostini* rule, even in cases where it acknowledges that the Supreme Court may subsequently use the case as a vehicle to exercise its

---

[15]*Id.* at 155 (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

[16]521 U.S. 203 (1997).

[17]*Id.* at 237 (quoted in *Extreme Associates*, 431 F.3d at 155).

[18]*Id.* at 237-38; *see also Robertson v. Morgan County Board of County Commissioners*, 1999 WL 17787, *7(unpublished 10th Cir. Jan. 6, 1999) (considering new case law, but finding that under *Agostini* it would be inappropriate for circuit court to conclude binding Supreme Court precedent was impliedly overruled by subsequent case).

prerogative to overrule prior precedent.[19]  This Court, as did the Third Circuit in *Extreme Associates*, finds that the *Reidel/Orito* cases upheld the constitutionality of the statutes at issue post-*Stanley*.[20]  As explained in *Reidel*, prior precedent "squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today."[21]

Lawrence did not involve statutes prohibiting distribution of obscenity to the public, commercial activity, or use of the mail.  *Lawrence* is not directly controlling.  Accordingly, it is not necessary for this Court to delve into the current dispute over the exact nature of the right recognized in *Lawrence*.[22]  Instead, under *Agostini*, this Court must follow the controlling Supreme Court precedent and reject Defendant's challenges to the constitutionality of the statutes under which they are charged.

---

[19]*United States v. Patton*, 451 F.3d 615, 635-36 (10th Cir. 2006) (applying the Supreme Court case which directly controls, even though it found "considerable tension" between that precedent and the approach adopted in more recent Supreme Court case law and recognized that the Supreme Court may "revisit this issue in an appropriate case—maybe even this one.").

[20]*Reidel*, 402 U.S. at 355-56 (rejecting constitutional challenge to § 1461 and holding that despite *Stanley's* recognition of the right of individuals to read and view what they want in the privacy of their own homes, there is no constitutional right to distribute or sell obscene material).

[21]*Id.* at 356.

[22]*See Seegmiller*, 528 F.3d at 771-72 (collecting cases finding *Lawrence* did not recognize fundamental right regarding private sexual conduct).

B.  Vindictive Prosecution

The parties agree the test for vindictive prosecution is set forth in the Tenth Circuit's case, *United States v. Raymer* as follows:[23]

> A defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness.  Thereafter, the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons.[24]

Defendants argue that this case must be dismissed because the prosecution herein, like the prosecution in *United States v. P.H.E., Inc*,[25] is "motivated by the improper purpose of interfering with the defendant's constitutionally protected speech"[26] under the First Amendment.

The Court finds this case entirely distinguishable from the *P.H.E.* case.  In *P.H.E.*, there was evidence of the following: service on a single business of 118 different subpoenas; the prosecutors required the defendants to cease protected as well as unprotected activity; the government was acting to put the defendants out of business and, to that end, the prosecution threatened simultaneous prosecutions of the same Defendants in multiple and geographically distant jurisdictions.[27]  In the present case there was one

---

[23]941 F.2d 1031 (10th Cir. 1991).

[24]*Id*. at 1040 (citations omitted).

[25]965 F.2d 848 (10th Cir. 1992).

[26]Def.'s Mem. at 17 (quoting *P.H.E.*, 965 F.2d at 849).

[27]*P.H.E.*, 965 F.2d 851 (summarizing prosecution's method of targeting particular companies).

subpoena, no evidence of threats, no threat of any simultaneous prosecution in more than one jurisdiction, and no evidence that the government is attempting to put defendants out of business or attempting to prevent Defendants from selling constitutionally permitted material.

Defendants point to the facts that the prosecution originated with and was largely conducted by the Department of Justice's task force working out of the Washington D.C. area; the search warrant was obtained in Ohio where Defendants' business is located; a determination was made to order Defendants' product from this jurisdiction; and once that product was allegedly received here, to prosecute the action in this district.  In particular, Defendants repeatedly note that the prosecution did not arise from any complaint by a Utah citizen.  Defendants acknowledge that the charges in this case are continuing offenses between districts and, therefore, under 18 U.S.C. § 3237(a), may be "inquired of and prosecuted in any district from, through, or *into which* such commerce, mail matter or imported object . . . moves."[28]  Nonetheless, Defendants argue the government has overreached because it selected a district for prosecution that is perceived as a more restrictive community than the district where Defendants' business is located.

The government submits that the facts relied on by Defendants do not demonstrate either actual vindictiveness or a reasonable likelihood of vindictive prosecution.  The government relies on § 3237(a) and case law recognizing its prerogative to bring the

---

[28](emphasis added).

prosecution in any district from, through, or into which obscene matter moves.[29]   The government has produced its list of other contemporaneous obscenity prosecutions, none of which involved Defendants or their business.[30]   Those prosecutions are in the districts located in West Virginia, California, Washington, D.C., Florida, and Montana.  During 2006, the year the investigation began, Defendants sent 683 packages into this state.[31]

The Court finds that the facts highlighted by Defendants, together or individually, are insufficient to meet Defendants' burden.   There is nothing remarkable about either a national task force working on an investigation, assisting in obtaining a search warrant or assisting in the presentation of information to a local Grand Jury.   It was proper to obtain the search warrant from a magistrate located in the same district as the premises and property to be searched,[32] but it is also clear that prosecution of the continuing offenses alleged is proper in any of the districts specified in § 3237(a).   Defendants were doing business in this district aside from the material ordered as part of the investigation.   There is no showing that the prosecution is an attempt to require Defendants to stop sending

---

[29]*United States v. Bagnell*, 679 F.2d 826, 831 (11th Cir. 1982).

[30]Docket No. 89.

[31]Docket No. 51-2 ¶ 14.

[32]Fed. R. Crim. P. 41(b)(1) (providing "[a] magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize . . . property located in the district"). *See also United States v. Bailey*, 193 F. Supp. 2d 1044, 1051 (S.D. Ohio 2002)("[A] judicial officer in one district is generally without authority to issue a search warrant for property in another district.").

material that was protected by the First Amendment.[33]  The Court also finds that there is simply no evidence of a policy, practice, or threat of multiple prosecutions for these Defendants.   As demonstrated by the government's Notice of Other Obscenity Prosecutions, the government has prosecuted other defendants in other jurisdictions on similar charges.  Although Defendants make much of the fact that this case did not originate with a complaint by a citizen in this district, there is no such requirement in § 3237(a).

Finally, the Court notes that Defendants' main argument is that the choice to order the material into this district and to thereafter prosecute this district shows overreaching and a likelihood of vindictiveness simply because Defendants argue that this district has more restrictive community standards.  The Court finds that the Defendants do not establish either actual or likely vindictiveness by arguing or establishing that there are more restrictive community standards in this district than the district where they operate their business.  There is no requirement that the government be able to show a parity in the community standards between the district from which and the district into which the material moved in order to avoid a presumption of vindictiveness.  Otherwise, the provision of § 3237(a) allowing these types of continuing offenses to be prosecuted in any district into which the material allegedly moves would be rendered null. It has been long established that: "The fact that distributors of allegedly obscene materials may be

---

[33]*See P.H.E.*, 965 F.2d at 851 (noting that prosecutors acknowledged that purpose of threatened multiple prosecutions was to force defendants to cease distribution in Utah of all sexually oriented materials).

subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional because of the failure of application of uniform national standards of obscenity."[34]  This rule cannot be avoided by imposing a parity of community standards limitation on the prosecution's exercise of its prerogative to seek indictments in districts as permitted by § 3237(a).

The Court will deny the Motion to Dismiss for alleged vindictive prosecution.

C.  Improper Venue

As stated above, Defendants have not shown vindictive prosecution on the basis of the venue selection.  The Court finds that venue is proper in this district because this is a district into which the material allegedly moved.[35]

D.  Motion to Change Venue Under Fed. R. Crim. P. 21(b)

Rule 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."

> Although Fed. R. Crim. P. 21(b) permits courts to shift criminal proceedings to other districts, the factors germane to venue change [include such factors] as the location of the defendant, the location of the witnesses, the location of the offense, and the expenses involved.[36]

---

[34]*Hamling v. United States*,  418 U.S. 87, 106 (1974).

[35]*Bagnell*, 679 F.2d at 832 (also holding that "prosecution in the district of receipt is eminently reasonable in view of the fact that it is the recipient community that suffers the deleterious effects of pornographic distribution").

[36]*United States v. Hunter*, 672 F.2d 815, 816 (10th Cir. 1982) abrogation on other grounds recognized in *United States v. Call*, 129 F.3d 1402 (10th Cir. 1997) (citing *Platt*

As discussed above, this district is the location of the alleged continuing offenses. Defendants chose to do business in this district.   It appears that the witnesses, parties, and counsel are located throughout the country.  The Defendants and some counsel are located in Ohio.  Other defense counsel are located in New York state. At least one witness who will testify as to the receipt of mail resides in this district.  For purposes of this Motion, Defendants have not identified other witnesses who are not located in this district.  The Court notes that the evidentiary portion of the Motion to Suppress has already been held. The Court has also already continued the trial to accommodate one defendant's need to help care for a seriously ill family member.  Trial is scheduled and can be timely held in this district.  On balance, the Court finds that Defendants have not shown that venue should be transferred.

     E. *Miller* and Community Standards

Defendants argue that the world is very different than it was at the time of the *Miller v. California*[37] decision holding that the issue of obscenity is to be determined by the jury applying "contemporary community standards."[38]  They argue that more recent case law supports a finding that in the current Internet-based era, a national community standard, rather than a community standard should be applied, especially as they engaged in Internet-based retail. The government argues the *Miller* standard remains unchanged.

_____

*v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964)).

    [37]413 U.S. 15 (1973).

    [38]*Id*. at 24.

Having reviewed the case law cited by the parties, the Court finds that the *Miller* standard, while questioned in some case law, notably by the concurring Justices in *Ashcroft v. ACLU*,[39] remains controlling authority as to the statutes allegedly violated in the present case.[40]   As the Court has already ruled, under *Agostini*, unless and until that decision is changed by the Supreme Court, this Court is bound by the *Miller* ruling, despite the fact that Defendants advertise or sell their products over the internet.[41]

### III.  CONCLUSION AND ORDER

Based on the foregoing, it is therefore

---

[39]535 U.S. 564, 585 (2002) (holding that Child Online Protection Act's "reliance on community standards to identify 'material that is harmful to minors' does not *by itself* render the statute substantially overbroad for purposes of the First Amendment") (emphasis in original); *But see id.* at 588-91 (Justice O'Connor concurring in the judgment but arguing that Court should adopt "a national standard for defining obscenity on the Internet").

[40]*Id.*  at 583 (per Justice Thomas, holding that the Internet's "unique characteristics" did not "justify adopting a different approach than that set forth in *Hamling*," in a case involving the alleged violation of § 1461 by mailing obscene material, and *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115 (1989), a case involving an alleged violation of the federal statute prohibiting the use of telephones to make obscene or indecent communications for commercial purposes).

[41]*See United States v. Extreme Associates*, 2009 WL 113767, at *3-4 (W.D. Pa. Jan. 15, 2009) (rejecting argument that national standard should apply because "times have changed due to the advent of the Internet" and, instead, holding that the *Miller* ruling on use of community standards continues to apply to charges defendants distributed obscenity via the mail and Internet).

ORDERED that Defendants' Motion to Dismiss Indictment and for Alternative Relief in the form of a change of venue or adoption of a new standard (Docket Nos. 49 and 50) are DENIED.

DATED   February 27, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge