IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br><br><br><br><br><br>     vs.<br><br><br>SAMI R. HARB and MICHAEL HARB,<br>d.b.a. MOVIES BY MAIL,<br><br>     Defendants. | MEMORANDUM DECISION AND<br>ORDER DENYING MOTION TO<br>SUPPRESS EVIDENCE<br>OBTAINED DURING THE<br>EXECUTION OF THE SEARCH<br>WARRANT<br><br><br><br><br><br>Case No. 2:07-CR-426 TS |

## I.  INTRODUCTION

Defendants move to suppress all of the evidence seized in a search of their business premises on the grounds of lack of probable cause, overbreadth and lack of specificity.

The Court finds that there was probable cause to issue the warrant, the search warrant was not overbroad, and there is no lack of specificity. The Court finds no Fourth Amendment violation and will deny the Motion to Suppress.

## II.  FINDINGS OF FACT

Movies by Mail operates a mail and internet order business selling adult sexually-explicit movies from a location in a warehouse-like building in Cleveland, Ohio (the business premises).  Defendant Sami Harb is Movies by Mail's president and Defendant Michael Harb is its vice-president.

In March 2007, FBI agents accessed Movies by Mail's internet website to purchase pornographic DVDs to be shipped to a Utah address, where they were picked up by an FBI Special Agent.  Three of the movies (the three subject movies) are alleged to be obscene.

In early June 2007, an FBI Special agent (the Utah agent) prepared an affidavit (the Utah affidavit) to present to a Magistrate Judge in the District of Utah (the Utah magistrate) supporting a criminal complaint charging Sami and Michael Harb with engaging in the business of selling or transferring obscene material, in violation of 18 U.S.C. § 1466.  In the Utah affidavit, the Utah agent explains he has lived and worked in Utah for several years.  He explains his review of the three subject movies, describes the content of the three subject movies in explicit detail, and explains that he uses the term "obscene matter" to refer to material considered obscene under the test announced in *Miller v. California*,[1] and states that *Miller* test.  Based on the content of the three subject movies and his application of the *Miller* test to determine obscene matter, the Utah agent concludes that he has probable cause to believe that Defendants were engaged in the business of selling

---

[1]413 U.S. 15, 24-25 (1973).

or transferring obscene matter which had been shipped or transported in interstate commence in violation of 18 U.S.C. § 1466.

The Utah agent submitted his affidavit to the Utah magistrate together with complete copies of the three subject movies.  The Utah magistrate made a probable cause determination that the Defendants were engaged in the business of selling or transferring obscene matter that had been shipped or transported in interstate commerce.  Based on the probable cause finding, the Magistrate signed the Complaint charging Defendants with a violation of 18 U.S.C. §1466 on June 8, 2007.

On June 13, 2007, another FBI special agent (the Ohio agent) applied for a search warrant for Defendants' business premises.  In support, he submitted an affidavit (the Ohio affidavit) with attachments.[2]

The Ohio affidavit recites that it is based on the Ohio agent's personal knowledge or information from other law enforcement officers.  It sets forth the circumstances of the investigation, the purchase, shipping and delivery of the three subject movies.  It sets forth the facts of the Utah agent's receipt and review of the three subject movies and the manner in which the Utah agent deemed the content of the three subject movies to be obscene by applying the *Miller* test.  The Ohio affidavit, like the earlier Utah affidavit, comprehensively describes the content of the three subject movies in explicit detail.

The Ohio affidavit also sets forth facts relating to the Ohio agent's knowledge of Movies by Mail's operations, ownership, and location.  The Ohio affidavit recites how, upon

---

[2]Def.'s Mem. Ex. A (affidavit and attachments).

judicial review of the Utah affidavit, the Utah magistrate made a determination of probable cause to believe the three subject movies were obscene as defined in *Miller*.  The Ohio Affidavit further recites that the Utah magistrate had full copies of the three subject movies when he made his probable cause determination.  The Complaint and the Utah affidavit are attached to the Ohio affidavit.

The Ohio affidavit explains why the Ohio agent believes that there is probable cause to believe that violations of the federal obscenity statutes had been committed.   It also explains why the Ohio agent believes that the evidence, fruits, and instrumentalities of the violation would be found at the business premises.  It explains what that evidence, fruits, and instrumentalities would consist of, including records kept as data capable of being read, stored or interpreted by a computer, and stored on computer hard drives and external drive.  The Ohio affidavit explains in great detail why, in the Ohio agent's experience and consultations with other agents involved in similar situations, a complete search and seizure of information from computers often requires seizure of all electronic storage devices to permit a thorough search later by qualified computer experts in a laboratory or other controlled environment.  It outlines the procedure to be followed  to determine if the computer equipment and storage devices could be searched on-site in a reasonable amount of time and the procedures to be followed if it could not.  The Ohio Affidavit is very specific about the long list of items that would need to be seized in order to search for data that is capable of being read or interpreted by a computer.

The Ohio affidavit attaches a list of nine numbered paragraphs, listed on Appendix B, as items to be searched, and includes a section on the procedures for handling

4

computer evidence.  The numbered paragraphs skip the number nine, so that although there are only nine paragraphs, the last is numbered as "10."  For clarity, the Court will refer to the paragraphs by their assigned numbers.[3]  The numbered paragraphs relating to business records are limited to items dated from January 1, 2006, to the date of the affidavit, June 13, 2007.

On June 13, 2007, the Ohio agent presented the Affidavit together with its attachments to an Ohio magistrate (the issuing magistrate), who issued a warrant authorizing a search of the premises.  The Ohio affidavit and an Appendix C, which consisted of the Complaint and the Utah affidavit, are physically connected to the search warrant.  The search warrant authorizes the search of the entire business premises, including any computer and media found therein.

The search warrant was executed on June 14, 2007.  During the execution, the agents had with them the search warrant and its attached affidavit and Appendix C.  During the execution, the agents took over 300 photographs.  There were photographs of every room and every part of the interior and exterior of the premises, including photographs of the sexually explicit items and movies sold in the business.  There were no photographs of the three subject movies.

The following items were seized: three DVDs; fourteen marked banker boxes of customer transactions within the United States and internationally; a certificate issued by the Ohio Secretary of State regarding custody of the business records of MBM

---

[3]Def.'s Mem. Ex. A, Docket No. 56-2, 32-33 (Appendix B, Items to be Seized).

Entertainment, Inc;[4]  and various hard drives and external storage drives.[5]  Each of the banker's boxes is marked with a date span.  The dates are all within the date range specified in the search warrant.

The FBI provided the Defendants with copies of the seized hard drives.  Defendants assert that the seized hard drives contain movie samples, still images from movies, pictures, pictures of a company party, music, word documents, web site images, advertisements/web banners, inventory lists, receipts, customer orders, and customer data information such as the names, addresses, credit card numbers, phone numbers and e-mail addresses of customers.

### III.  DISCUSSIONS AND CONCLUSIONS

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [6]

Defendants seek to suppress the evidence seized during the execution of the search warrant and the photographs taken during the search on the basis of lack of probable cause and overbreadth.  They contend (1)  the issuing magistrate did not make an independent finding of probable cause that the three subject movies were obscene based on the Ohio affidavit; (2) the search warrant is overbroad; (3) the agents acted

---

[4]According to the Ohio affidavit, MBM Entertainment is the domain registrant for the website, www.moviesbymail.com, through which agents ordered the three subject movies that were shipped to Utah.  Ohio Aff. at 6. ¶ 15-17.

[5]The parties have stipulated as to the items seized. Docket No. 75.

[6]U.S. Const. amend. IV.

6

outside the scope of the warrant when they took the photographs of the premises; and (4) the agents seized material outside the scope of the warrant such as to render the search a general warrant.

The government contends (1) that the issuing magistrate made an independent finding of probable cause to issue the warrant; (2) the warrant is not deficient for overbreadth; (3) the argument regarding the photographs by the agents of the business premises during the execution of the warrant lacks merit; (4) the agents did not improperly seize evidence outside the scope of the warrant; and (5) the government argues that even if there was a lack of probable cause or the warrant was overbroad, the *Leon*[7] good faith exception should apply.  The government concedes Defendants' standing to challenge the probable cause order.

A.  Issuing Magistrate's Finding of Probable Cause

Defendants first argue that the issuing magistrate did not make an independent determination as to the probable obscenity by focusing searchingly on the issue of obscenity prior to issuing the search warrant because: (1) the Ohio agent did not state his own opinion that the three subject movies were obscene, but instead relied on the Utah magistrate's determination based upon the statement of the Utah agent; and (2) there is no evidence that either magistrate actually viewed the three subject movies.

In support, Defendants rely on *Matter of Search of Kitty's East*,[8] which in turn stated

---

[7] *United States v. Leon*, 468 U.S. 897 (1984).

[8] 905 F.2d 1367, 1372 (10th Cir. 1990).

"the rule of *Marcus v. Search Warrant*, that no material presumptively protected by the First Amendment may be seized unless a neutral judicial officer has focused 'searchingly on the question of obscenity.'"[9]  The requirement that the magistrate focus searchingly on the question of obscenity does not require that the magistrate actually view the entire material personally.  For example, in *Kitty's East*, the magistrate relied on "affidavits describing eighteen videotapes, each of which was deemed by him to be obscene."[10]  Based on that written description, the magistrate also concluded that there was probable cause to believe that other videotapes, described in the affidavit as "identical in appearance to those reviewed, available in the same display area, and having the same subject matter, were equally obscene."[11]

As was stated by the Supreme Court in *New York v. P.J. Video, Inc.*:[12]

> [W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure.  On the contrary, we think that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is

---

[9]*Id*. at 1372 (quoting *Marcus v. Search Warrants of Property at 104 East*, 367 U.S. 717, 732 (1961)).

[10]*Id. Kitty's East* involved a determination of whether a search warrant was overbroad in the context of a Fed.R.Crim.P. 41(e) Motion for Return of Property before the rule was amended to make suppression and return of property separate and distinct inquiries.

[11]*Id*. at 1373 (holding that "[a]lthough ordinarily it would be preferable to identify the videotapes by name and include in the affidavit descriptions of the specific contents of each videotape, under the circumstances of [that] case [the appellate court does] not deem the failure to do so constitutionally fatal").

[12]475 U.S. 868 (1986).

obscene, and whether a warrant authorizing the seizure of the film should issue.[13]

"[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally."[14]  The standard for issuing a warrant was explained by the Tenth Circuit in *United States v. Sells*:[15]

> Probable cause requires a magistrate judge to find that, "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed."[16]

The issuing magistrate's determination regarding probable cause is afforded "great deference."[17]

The Court finds that the very explicit description of the content of the three subject movies in the Ohio affidavit provides probable cause for the issuing magistrate to have made a determination regarding obscenity.  Further, "[a]n affidavit can supply the requisite probable cause even if it contains only hearsay so long as the hearsay informants are shown to be reliable and the affidavit contains enough underlying circumstances for the

---

[13]*Id*. at 874 n.5 (citation omitted).

[14]*Id*. at 875.

[15]463 F.3d 1148 (10th Cir. 2006).

[16]*Id*. at 1154 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

[17]*Gates*, 462 U.S. at 236.

magistrate to decide for himself whether there is probable cause."[18]  "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."[19]

The Ohio affidavit contained all necessary information about the underlying circumstances that formed the basis of the Utah agent's opinion that the three subject movies were obscene to enable the issuing magistrate to decide for himself the issue of probable cause.  The information was not just stated, the Utah affidavit in its entirety was attached to the Ohio affidavit for the issuing magistrate to review. Similarly, the Complaint issued by an other judicial officer, the Utah magistrate, is also attached.

Defendants also argue that there was no probable cause because it was necessary for the Ohio affidavit to have stated that the three subject movies were obscene under Ohio, rather than Utah, standards because the warrant was served in Ohio.

As this Court noted in its Memorandum Decision Denying Defendant's Motion to Dismiss, the charges in this case are continuing offenses between districts and, therefore, under 18 U.S.C. § 3237(a), may be "inquired of and prosecuted in any district from, through, or into which such commerce, mail matter or imported object . . . moves."[20] The Court finds that the issuing magistrate had sufficient information in the Ohio affidavit and its attachments to determine that the three subject movies were obscene under the

---

[18]*United States v. Wolfenbarger*,  696 F.2d 750, 752 (10th Cir. 1982) (citing *Spinelli v. United States*, 393 U.S. 410 (1969)).

[19]*United States v. Ventresca*, 380 U.S. 102, 111 (1965).

[20]Docket No. 90, at 8 (quoting 18 U.S.C. § 3237(a)).

standards of either community.  The issuing magistrate had the basis of the Utah agent's opinion that the movies were obscene and had the Utah magistrate's determination of probable cause regarding a violation of the federal laws prohibiting selling or shipping obscenity.  The issuing magistrate had the very explicit description of the three subject movies in the Ohio affidavit from which to make his own determination regarding probable cause and obscenity under local community standards in Cleveland.

The Court finds that the issuing magistrate had a substantial basis for concluding that probable cause existed.

B. Overbreadth

Defendants next contend that the warrant is invalid as overbroad because it allowed for seizure of items not related to the offense for which it was issued and was so general as to allow a general rummaging and search without limitation.

> The particularity requirement is satisfied when the description of an item to be searched for and seized pursuant to the warrant enables the searcher to reasonably ascertain and identify the things authorized to be seized.  Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit.  However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.[21]

"Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the

---

[21]*Sells*, 463 F.3d at 1154 (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988)).

activity under investigation permit."[22]   A warrant may be overbroad where its language authorized the seizure of "'virtually every document that one might expect to find in a . . . company's office,' including those with no connection to the criminal activity providing the probable cause for the search."[23]

Defendants argue that the search warrant in this case is similar to the one found to be overbroad in *United States v. Leary*.[24]   In *Leary*, the search warrant authorized the search of business premises with only two limitations: one, that the documents seized be of a category of typical of business records and, two, that the documents relate "to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act . . . and the Export Administration Act of 1979."[25]   The Tenth Circuit found the search warrant was facially overbroad and also that the government had available information from which it could have limited the documents by describing in greater detail the items sought or the criminal activity.   In *Leary*, the search warrant's description of business records to be seized warrant had no date limitation.

The Court finds that the search warrant in the present case is not a mere general warrant as in *Leary*.   In this case, three of the numbered paragraphs contain a limitation to the three subject movies.   Four of the numbered paragraphs are limited by reference to

---

[22]*United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir.1997)(quoting *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir.1997)).

[23]*Davis,* 111 F.3d at 1479 (quoting *Leary*, 846 F.2d at 602).

[24]846 F.2d 592.

[25]*Id.* at 594.

the specific date range (from the start of the investigation through the date of the execution of the warrant), a period of approximately a year and a half.  The other two numbered paragraphs are limited to categories of documents relating to a specific purpose or to the three Defendants.  In this case, as in *Kitty's East*:

> Because the executing officers could not, in compliance with the warrant, seize any and all business records on [the business] premises, but rather were restricted to those referring to certain products, certain businesses or individuals, and certain time periods, we hold that the provisions of the national warrant were not facially overbroad.  These restrictions are sufficient to allow executing officers, acting in good faith, to distinguish between items that may and may not be seized.[26]

Because the search warrant is not a general warrant, it not invalid on its face.

The Court next turns to the Defendants' arguments regarding lack of particularity in the numbered paragraphs.[27] Defendants concede that paragraphs one, two and seven are limited by reference to the three subject movies.  However, they contend that these paragraphs nonetheless lack specificity because they are not limited to items related to the district of Utah.  The Court finds that the limitation by reference to the three subject movies is specific enough to allow the executing officers to distinguish between items that may or may not be seized.

Defendants contend that paragraphs three through six, eight, and ten lack specificity because they do not refer to a specific crime.  In addition, they contend that paragraph three does not relate to the district of Utah, that paragraphs four through six are  general

---

[26]905 F.2d at 1375 (quoting *Leary*, 846 F.2d at 602)..

[27]*See* Def.'s Mem. Ex. A, Docket No. 56-2, 32-33 (Appendix B, Items to be Seized).

lists of documents only limited by dates, paragraph eight is limited only by dates, and that paragraph ten, which refers to a specific website, is limited only by dates.

The government contends that the descriptions are sufficiently particular in light of the criminal activity under investigation, the limitations of the time frame in which the investigation was conducted and the alleged offenses occurred, that the affidavit can be used to help cure any facial overbreadth in the search warrant, and that the *Leon* good faith exception applies.

The Court finds there is sufficient particularity in each of the numbered paragraphs, in light of the circumstances of the search, which involved a fairly large internet and mail order business with many employees, and the search's relation to the probable cause established in the Ohio affidavit.

The Court finds that the categories of documents listed in paragraphs one, two, and seven are limited by reference to the three subject movies, which are listed by their titles in paragraph one. This is sufficient to enable the searcher to reasonably ascertain and identify the things authorized to be seized, even without any reference to the district of Utah.

Paragraph three contains a very limited and specific category of items and is limited by reference to the three Defendants. The Court finds it is sufficiently specific to enable the searcher to reasonably ascertain and identify the things authorized to be seized.

Paragraphs four, five, and six are broad categories of documents. However, each paragraph is limited by reference to the specific year-and-a-half time frame and to the three Defendants. Although this includes a large number of potential documents, the

14

"description is as specific as the circumstances and the nature of the activity under investigation permit."[28]  Unlike the situation in *Leary*, the agents in the present case had no more specific information about the Defendants' business operation, its ownership, or its control that could have enabled the agents to include more specific identifying information.  Similarly, unlike the situation in *Leary*,[29] in this case, the Ohio affidavit was incorporated into the warrant and was available to the agents during their search.

Paragraph eight covers "any and all records showing or bearing indicia of the use, ownership, possession, or control of items" contained at the business premises and gives an illustrative list: "invoices, bills, leases, deeds, permits, license, telephone bills, tax receipts, or other documentation. . ."  This illustrative list—qualified by the limitation that the record relate to "use, ownership, possession, or control"—is sufficient to enable the searcher to reasonably ascertain and identify the things authorized to be seized.

Paragraph ten covers a broad category of "business records," but limits that category by the year-and-a-half date span, and a specific and limited subject matter—"the creation and maintenance of" a named website.  This is sufficient to enable the searcher to reasonably ascertain and identify the things authorized to be seized.

The Court finds that the search warrant is not void for being overly broad or lack of particularity.

---

[28]*Leary*, 846 F.3d at 604-05 (finding that government had information on limiting factors such as "a specific period of time coincident to the suspect transaction,"but chose not to include those limiting factors in the search warrant).

[29]*Id.*

C.  Scope

Defendants contend that "taking the photographs amounted to a seizure of intangible things, *i.e.*, the images depicted within the photographs."[30]   Defendants argue that taking the photographs is therefore outside the scope of the warrant.

Defendants cite no authority for this argument.  As cited by the government, the authority is to the contrary.[31]  The agents were lawfully on the premises and, therefore, their photographs during the execution of the search warrant is not a seizure in violation of the Fourth Amendment.  Because the agents "in this case were properly on the [business] premises, they could record by photography scenes presented to their plain view."[32]  Whether these photographs are admissible at trial is not before the Court at this time.

Defendants next contend that, even if the search warrant is not facially overbroad, it became overbroad because the manner in which the agents executed the warrant turned it into a general warrant.  In support, they point out the agents seized and imaged every computer on the premises and seized many banker's boxes of documents.  Because of the

---

[30]Def.'s Mem. at 11.

[31]*Bills v. Aseltine*, 958 F.2d 697, 707 (6th Cir. 1992) (finding that "the recording of visual images of a scene by means of photography does not amount to a seizure because it does not 'meaningfully interfere' with any possessory interest"); *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006) (following *Bills*); *United States v. Espinoza*, 641 F.2d 153, 167 (4th Cir. 1981) (finding that where agent was lawfully on the premises in the execution of a valid search warrant, the agent "did not exceed the scope of the warrant by making the photographs of what he saw in plain view and to that extent 'seizing' those views themselves as evidence").

[32]*Bills*, 958 F.2d at 707.

volume of material seized, they contend the manner in which the warrant was executed turned it into a general warrant allowing the agents to rummage in and search virtually every document that one might expect to find in a company's office.

The government points out that Defendants have not specifically identified particular material recovered in allegedly exceeding the warrant.  The government contends that the incidental and temporary detention of innocent contents of seized items such as computers does not invalidate an otherwise valid search.

At Defendants' request, the government has identified the categories of evidence for potential use at trial.  Defendants responded with its Stipulation of Evidence Seized, which does not differ materially from the list in the Evidence Recovery Log,[33] except for the non-specific mention of the 300-plus photographs, the specific listing of a certificate for MBM Entertainment, and the Defendants' notation that during their own review of the mirror images of the seized hard-drives they found many files, as set forth in the findings of fact above.

Defendants have not identified any specific evidence in the banker's boxes that they argue exceed the scope of the warrant.  Thus, they do not show how seizure of the banker's boxes evidences that the manner in which the warrant was executed turned it into a general warrant to rummage in and search virtually every document that one might expect to find in a company's office.

---

[33]Def.'s Mem. Ex. 2.

Regarding the computer hard drives, Defendants argue that they contain files that are not related to items specified in the search warrant.  The Court will "not hold unlawful the otherwise constitutional seizure of the computer equipment in order to prevent the temporary deprivation of plaintiffs' rights to the contents."[34]  The search warrant anticipated that the search of the hard drives might have to occur off-site in a laboratory or other controlled environment and set forth the procedure to be followed.  As part of that procedure, the Ohio affidavit explained that computer personnel may examine all of the data stored to determine if it falls within the list of items to be seized.[35]  The Ohio affidavit showed probable cause for such procedure and that affidavit was incorporated into the search warrant.  Therefore, the fact that the entire hard drives were seized, moved to an off-site location, and all of the data examined to determine if it fit within the list of items to be seized, does not show a search exceeding the scope of the warrant.  Instead, this procedure was specifically incorporated into the search warrant and is therefore not outside its scope.  This is not a case of inadvertent discovery of evidence of an unrelated offense through use of the search protocol.  Nor is this a case, such as the situation involved in a child pornography case, where the government agents have the ability to identify and thereby limit the search of stored data to only specific items (usually images) without the need to open other types of files.

---

[34]*Davis,*  111 F.3d at 1481.

[35]Ohio Aff. at 22 ¶ iv.

The search of the hard drives is within the scope of the search warrant, and therefore, their seizure and search does not constitute a general search exceeding the scope of the search warrant.

D.  *Leon* Good Faith Exception

The government contends that the *Leon* good faith exception applies to this case.

In *Leon*, the Supreme Court adopted a good-faith exception to the application of the exclusionary rule and specifically applied that exception where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, even though the search warrant was later deemed to be invalid.  In this circuit, we have concluded that *Leon's* good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer.[36]

When reviewing the reasonableness of an officer's reliance upon a search warrant, this court must examine the underlying documents to determine whether they are 'devoid of factual support.  The *Leon* Court recognized four situations in which an officer would not have reasonable grounds for believing that a search warrant had been properly issued.  In any of those situations, the good-faith exception to the exclusionary rule does not apply.  Thus, if the issuing judge was misled by an affidavit containing false information or information that the affiant would have known was false but for his reckless disregard of the truth, the evidence should be suppressed.  Or suppression is required when the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  Additionally, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.[37]

Defendants argue only that the search warrant was facially invalid.  The Court has found above that it is not facially invalid.  Accordingly there is no showing that any of the

---

[36]*United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir. 2008) (quotation marks and citations omitted).

[37]*Id*. (quotation marks and citations omitted).

four situations that would be exceptions to *Leon* apply.  Therefore, even if probable cause were not established or the warrant lacked particularity, the Court would deny the Motion to Suppress under the good faith exception of *Leon*.

IV.  ORDER

Based on the foregoing, it is

ORDERED that Defendants' Motion to Suppress Evidence Obtained During the Execution of the Search Warrant (Docket No. 55) is DENIED.

DATED   March 30, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge